TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
POONAM G. KUMAR (Cal. Bar No. 270802)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
        1100 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-0719
        Facsimile: (213) 894-6269
        E-mail:    poonam.kumar@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**FILED**
CLERK, U.S. DISTRICT COURT

**6/8/2021**

CENTRAL DISTRICT OF CALIFORNIA
BY: ___JB___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR   2:21-cr-00273-ODW |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT MARY MARGARET KREUPER |
| v. | |
| MARY MARGARET KREUPER, | |
| Defendant. | |

1.   This constitutes the plea agreement between MARY MARGARET

KREUPER ("defendant") and the United States Attorney's Office for the

Central District of California (the "USAO") in the investigation of

defendant's embezzlement of funds belonging to St. James Catholic

School ("St. James School").  This agreement is limited to the USAO

and cannot bind any other federal, state, local, or foreign

prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

        a.   Give up the right to indictment by a grand jury and,

at the earliest opportunity requested by the USAO and provided by the

Court, appear and plead guilty to a two-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with wire fraud, in violation of 18 U.S.C. § 1343, and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

   b.   Not contest facts agreed to in this agreement.

   c.   Abide by all agreements regarding sentencing contained in this agreement.

   d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

   e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

   f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

   g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

   h.   Satisfy any and all restitution/fine obligations based on ability to pay by delivering a certified check or money order to the Fiscal Clerk of the Court, to be held until the date of sentencing and, thereafter, applied to satisfy defendant's restitution/fine balance.  Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, 11th Floor, Los Angeles, California 90012.

i.    Ability to pay shall be assessed based on the Financial Disclosure Statement, referenced below, and all other relevant information relating to ability to pay.

j.    Defendant agrees that any and all restitution/fine obligations ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

k.    Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 N. Los Angeles St., Suite 7516, Los Angeles, CA 90012.

l.    Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

m.    Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

n.    Agree that all court appearances, including her change of plea hearing and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by Order of Chief Judge 20-097 or another order, rule, or statute. Defendant understands that, under the Constitution, the United States Code, the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43),

1  she may have the right to be physically present at these hearings.

2  Defendant understands that right and, after consulting with counsel,

3  voluntarily agrees to waive it and to proceed remotely.  Defense

4  counsel also joins in this consent, agreement, and waiver.

5  Specifically, this agreement includes, but is not limited to, the

6  following:

7        i.   Defendant consents under Section 15002(b) of the

8  CARES Act to proceed with her change of plea hearing by VTC or

9  telephone, if VTC is not reasonably available.

10        ii.   Defendant consents under Section 15002(b) of the

11  CARES Act to proceed with her sentencing hearing by VTC or telephone,

12  if VTC is not reasonably available.

13        iii. Defendant consents under 18 U.S.C. § 3148 and

14  Section 15002(b) of the CARES Act to proceed with any hearing

15  regarding alleged violations of the conditions of pre-trial release

16  by VTC or telephone, if VTC is not reasonably available.

17        o.   Agree to and not oppose the imposition of the

18  following condition of probation or supervised release:

19      Defendant shall not work in any capacity, whether as a whole or

20      partial owner, employee, volunteer, consultant, or otherwise, in

21      any business that involves the management or control of funds,

22      business accounts, brokerage accounts, and/or bank accounts of

23      another.  Further, defendant shall provide the Probation Officer

24      with access to any and all business records, client lists, and

25      other records pertaining to the operation of any business owned,

26      in whole or in part, by defendant, as directed by the Probation

27      Officer.

28

1

<u>THE USAO'S OBLIGATIONS</u>

2    3.    The USAO agrees to:

3          a.    Not contest facts agreed to in this agreement.

4          b.    Abide by all agreements regarding sentencing contained
5    in this agreement.

6          c.    At the time of sentencing, provided that defendant
7    demonstrates an acceptance of responsibility for the offenses up to
8    and including the time of sentencing, recommend a two-level reduction
9    in the applicable Sentencing Guidelines offense level, pursuant to
10   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
11   additional one-level reduction if available under that section.

12

<u>NATURE OF THE OFFENSES</u>

13   4.    Defendant understands that for defendant to be guilty of
14   the crime charged in count one of the information, that is, wire
15   fraud, in violation of Title 18, United States Code, Section 1343,
16   the following must be true: (1) defendant knowingly devised,
17   participated in, executed and attempted to execute a plan to obtain
18   money or property by means of false or fraudulent pretenses,
19   representations, or promises; (2) the false pretenses,
20   representations, or promises were material; that is, they had a
21   natural tendency to influence, or were capable of influencing, a
22   person to part with money or property; (3) the defendant acted with
23   the intent to defraud; and (4) defendant used, or caused to be used,
24   an interstate wire communication to carry out or attempt to carry out
25   an essential part of the scheme.

26   5.    Defendant understands that for defendant to be guilty of
27   the crime charged in count two of the information, that is, money
28   laundering, in violation of Title 18, United States Code, Section

1956(a)(1)(B)(i), 2(b), the following must be true: (1) defendant conducted or willfully caused to be conducted, a financial transaction involving property that represented the proceeds of wire fraud; (2) defendant knew that the property represented the proceeds of some form of unlawful activity; and (3) defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, control of the proceeds.

## PENALTIES AND RESTITUTION

6.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343, is: 20 years of imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1956(a)(1)(B), is: 20 years of imprisonment; a 3-year period of supervised release; a fine of $500,000 00 or twice the value of the property involved in the transaction, whichever is greatest; and a mandatory special assessment of $100.

8.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 40 years of imprisonment; a 3-year period of supervised release; a fine of $750,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and mandatory special assessments of $200.

9.   Defendant understands that defendant will be required to pay full restitution to the victim of the offenses to which defendant

is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result of any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty.  The parties currently believe that the applicable amount of restitution is approximately $835,339, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

10.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm

or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

12.  Defendant and her counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her convictions on her immigration status.  Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

13.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts attached as Exhibit B

8

and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 15 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

14.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

15.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. § 2B1.1(a)(1)(B)] |
| Specific Offense Characteristics: | | |
| Loss of More Than $550,000 | +14 | [U.S.S.G. § 2B1.1(b)(1)(H)] |
| Money Laundering | +2 | [U.S.S.G. § 2S1.1(b)(2)(B)] |
| Abuse of Position of Trust | +2 | [U.S.S.G. § 3B1.3] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

16.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).  By way of example, but not limitation, the parties agree that, because the justice system is facing an unprecedented crisis through the backlog of cases, defendant is entitled to a two-level variance as recognition of defendant's early acceptance of responsibility, which will lessen the burden on the court system by: (1) waiving any right to presence and pleading guilty at the earliest opportunity by VTC (or telephone, if VTC is not reasonably available); (2) waiving any right to presence and agreeing to be sentenced by VTC (or telephone, if VTC is not reasonably available) should the Central District of California's General Order allow for it; (3) agreeing to appear at all other times by VTC or telephone; and (4) waiving all appellate rights.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

18.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be

10

represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTIONS</u>

19.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

1

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

2      20.  Defendant gives up the right to appeal all of the

3 following:  (a) the procedures and calculations used to determine and

4 impose any portion of the sentence; (b) the term of imprisonment

5 imposed by the Court, provided it is at or below the high-end of the

6 Sentencing Guidelines range corresponding to an offense level of 20

7 and the criminal history category calculated by the Court; (c) the

8 fine imposed by the Court, provided it is within the statutory

9 maximum; (d) to the extent permitted by law, the constitutionality or

10 legality of defendant's sentence, provided it is within the statutory

11 maximum; (e) the amount and terms of any restitution order; (f) the

12 term of probation or supervised release imposed by the Court,

13 provided it is within the statutory maximum; and (g) any of the

14 following conditions of probation or supervised release imposed by

15 the Court: the conditions set forth in Second Amended General Order

16 20-04 of this Court; the drug testing conditions mandated by 18

17 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use

18 conditions authorized by 18 U.S.C. § 3563(b)(7).

19      21.  The USAO agrees that, provided all portions of the sentence

20 are at or below the statutory maximum specified above the USAO gives

21 up its right to appeal any portion of the sentence, with the

22 exception that the USAO reserves the right to appeal the amount of

23 restitution ordered.

24

<u>WAIVER OF COLLATERAL ATTACK</u>

25      22.  Defendant also gives up any right to bring a post-

26 conviction collateral attack on the convictions or sentence,

27 including any order of restitution, except a post-conviction

28 collateral attack based on a claim of ineffective assistance of

counsel, a claim of newly discovered evidence, or an explicitly
retroactive change in the applicable Sentencing Guidelines,
sentencing statutes, or statutes of conviction.  Defendant
understands that this waiver includes, but is not limited to,
arguments that the statutes to which defendant is pleading guilty is
unconstitutional, that newly discovered evidence purportedly supports
defendant's innocence, and any and all claims that the statement of
facts provided herein is insufficient to support defendant's pleas of
guilty.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

23.  Defendant agrees that if, after entering guilty pleas
pursuant to this agreement, defendant seeks to withdraw and succeeds
in withdrawing defendant's guilty pleas on any basis other than a
claim and finding that entry into this plea agreement was
involuntary, then the USAO will be relieved of all of its obligations
under this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

24.  Defendant agrees that if either count of conviction is
vacated, reversed, or set aside, the USAO may: (a) ask the Court to
resentence defendant on the remaining counts of conviction, with both
the USAO and defendant being released from any stipulations regarding
sentencing contained in this agreement, (b) ask the Court to void the
entire plea agreement and vacate defendant's guilty pleas on the
remaining count of conviction, with both the USAO and defendant being
released from all their obligations under this agreement, or
(c) leave defendant's remaining convictions, sentence, and plea
agreement intact.  Defendant agrees that the choice among these three
options rests in the exclusive discretion of the USAO.

1

EFFECTIVE DATE OF AGREEMENT

2      25.  This agreement is effective upon signature and execution of

3  all required certifications by defendant, defendant's counsel, and an

4  Assistant United States Attorney.

5

BREACH OF AGREEMENT

6      26.  Defendant agrees that if defendant, at any time after the

7  effective date of this agreement, and an Assistant United States

8  Attorney, knowingly violates or fails to perform any of defendant's

9  obligations under this agreement ("a breach"), the USAO may declare

10  this agreement breached.  All of defendant's obligations are

11  material, a single breach of this agreement is sufficient for the

12  USAO to declare a breach, and defendant shall not be deemed to have

13  cured a breach without the express agreement of the USAO in writing.

14  If the USAO declares this agreement breached, and the Court finds

15  such a breach to have occurred, then: (a) if defendant has previously

16  entered guilty pleas pursuant to this agreement, defendant will not

17  be able to withdraw the guilty pleas, and (b) the USAO will be

18  relieved of all its obligations under this agreement.

19

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

20

OFFICE NOT PARTIES

21      27.  Defendant understands that the Court and the United States

22  Probation and Pretrial Services Office are not parties to this

23  agreement and need not accept any of the USAO's sentencing

24  recommendations or the parties' agreements to facts or sentencing

25  factors.

26      28.  Defendant understands that both defendant and the USAO are

27  free to: (a) supplement the facts by supplying relevant information

28  to the United States Probation and Pretrial Services Office and the

Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 15 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

29.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

30.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional

1  promise, understanding, or agreement may be entered into unless in a

2  writing signed by all parties or on the record in court.

3  <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

4        31.  The parties agree that this agreement will be considered

5  part of the record of defendant's guilty plea hearing as if the

6  entire agreement had been read into the record of the proceeding.

7  AGREED AND ACCEPTED

8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
9  CALIFORNIA

10 TRACY L. WILKISON
   Acting United States Attorney

11

12  _____          06/08/2021
   POONAM G. KUMAR                            _____
13 Assistant United States Attorney           Date

14

15
   _____          _____
16 MARY MARGARET KREUPER                       June 2, 2021
   Defendant                                  Date
17

18
   _____          _____
19 MARK BYRNE                                  6/2/21
20 Attorney for Defendant MARY                 Date
   MARGARET KREUPER
21

22

23

24

25

26

27

28

                              16

1

<u>CERTIFICATION OF DEFENDANT</u>

2  I have read this agreement in its entirety.  I have had enough

3  time to review and consider this agreement, and I have carefully and

4  thoroughly discussed every part of it with my attorney.  I understand

5  the terms of this agreement, and I voluntarily agree to those terms.

6  I have discussed the evidence with my attorney, and my attorney has

7  advised me of my rights, of possible pretrial motions that might be

8  filed, of possible defenses that might be asserted either prior to or

9  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10  of relevant Sentencing Guidelines provisions, and of the consequences

11  of entering into this agreement.  No promises, inducements, or

12  representations of any kind have been made to me other than those

13  contained in this agreement.  No one has threatened or forced me in

14  any way to enter into this agreement.  I am satisfied with the

15  representation of my attorney in this matter, and I am pleading

16  guilty because I am guilty of the charges and wish to take advantage

17  of the promises set forth in this agreement, and not for any other

18  reason.

19

20  MARY MARGARET KREUPER                June 2, 2021

   Defendant                            Date

21

22

23

24

25

26

27

28

17

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am MARY MARGARET KREUPER's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          Date  6/2/21
MARK BYRNE
Attorney for Defendant MARY
MARGARET KREUPER

18

**EXHIBIT A**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. |
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1956(a)(1)(B)(i):  Money Laundering] |
| MARY MARGARET KREUPER, | |
| Defendant. | |

The Acting United States Attorney charges:

<u>COUNT ONE</u>

[18 U.S.C. § 1343]

A.   <u>INTRODUCTORY ALLEGATIONS</u>

At times relevant to this Information:

1.   Defendant MARY MARGARET KREUPER resided in Los Angeles County, within the Central District of California.

2.   Defendant KREUPER was a member of an order of nuns affiliated with the Catholic Church (the "order") and located in Los Angeles County, within the Central District of California.  As a nun, defendant KREUPER took a vow of poverty and her living expenses were paid for by the order.  For 28 years until her retirement in 2018, defendant KREUPER was employed as principal of St. James Catholic

School ("St. James School"), an elementary school located in Torrance, California, within the Central District of California.  All monies earned by defendant KREUPER for her employment at the St. James School were to be paid to the order.

3.   As principal of the St. James School, defendant KREUPER was responsible for overseeing and managing the financial affairs of the school, including by properly accounting for and safeguarding the school's finances.  In order to allow her to fulfill these responsibilities, St. James School and its administrators (the "Administration") entrusted defendant KREUPER with the management and control of the school's bank accounts.  Consistent with these responsibilities, defendant KREUPER oversaw the receipt of cash and checks from parents of students enrolled at the St. James School, including checks to pay for tuition, school fees, and to make charitable donations to the school.  Defendant KREUPER was responsible for causing these monies to be deposited into the school's bank accounts and ensuring that the funds were appropriately accounted for in the school's financial records.

4.   To ensure that the school's finances were properly managed, the Administration required defendant KREUPER to submit monthly and annual reports summarizing the financial position of the school.  The monthly reports contained information about the amount of tuition received as well as the expenses incurred by the school.  The annual financial reports contained a detailed summary of the St. James School's finances that included, among other information, the following: (a) a profit and loss statement for the St. James School; (b) a balance sheet for the St. James School; (c) a breakdown of all income received by the St. James School, including the income

2

received from tuition, fees, and donations; (d) a breakdown of all expenses paid by the school, including salaries paid to the staff and payments for repairs and maintenance of land and equipment; (e) a list of all bank accounts used by the school in the prior year, including the name on the account, the name of the bank at which the account was held, the account number, and the balance as of the end of the year; and (f) bank statements and bank reconciliations for each account listed on the report.

5.   St. James School held its funds in bank accounts in its name.  In or about March 1986, an account in the name of St. James School was opened at Parishioners Federal Credit Union (the "St. James Savings Account").  In or around April 1995, defendant KREUPER became a signatory on this account.

6.   In or around March 1998, the Administration opened another account in the name of St. James School at Parishioners Federal Credit Union to pay for the living expenses of defendant KREUPER and the other nuns employed by the St. James School ("St. James Convent Account").  Defendant KREUPER was a signatory on the St. James Convent Account.

B.   THE SCHEME TO DEFRAUD

7.   Beginning at least as early as in or about 2008 and continuing through in or about September 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendant KREUPER, knowingly and with the intent to defraud, devised, participated in, executed, and attempted to execute a scheme to defraud St. James School and the Administration as to material matters, and to obtain moneys, funds, assets, and other property owned by an in the custody and control of St. James School and the

3

1    Administration by means of false and fraudulent pretenses,

2    representations, and promises, and the concealment of material facts.

3        8.    The fraudulent scheme operated, in substance, in the

4    following manner:

5            a.    Defendant KREUPER took possession of cash and checks

6    made payable to St. James School from parents of St. James School

7    students, and, without the knowledge and authorization of St. James

8    School and/or the Administration, fraudulently diverted these funds

9    by depositing them into the St. James Convent Account.  Defendant

10   KREUPER also deposited funds intended for St. James School into the

11   St. James Savings Account.

12           b.    Without the knowledge and authorization of St. James

13   School and/or the Administration, defendant KREUPER then used

14   diverted funds deposited into the St. James Convent Account and St.

15   James Savings Account to pay for expenses that the order would not

16   have approved, much less paid for, including large gambling expenses

17   incurred at casinos and certain credit card charges.

18           c.    In order to further and conceal her fraudulent scheme,

19   defendant KREUPER falsified the monthly and annual St. James School's

20   financial reports.  Specifically, in these reports, defendant KREUPER

21   failed to account for the receipt of the diverted funds, the transfer

22   of those funds to accounts used by defendant KREUPER, and the use of

23   those funds by defendant KREUPER.  Further, in these reports,

24   defendant KREUPER failed to include any reference to the St. James

25   Convent Account and the St. James Savings Account, and failed to

26   include the entirety of the funds deposited into and withdrawn from

27   these accounts.  By falsifying these reports in this way, defendant

28   KREUPER lulled St. James School and the Administration into believing

4

the school's finances were being properly accounted for and its financial assets properly safeguarded, which, in turn, allowed defendant KREUPER to maintain her access and control of the school's finances and accounts and thus, to continue operating the fraudulent scheme.

d.   In order to conceal the scheme, defendant KREUPER directed St. James School employees to alter and destroy financial records belonging to St. James School during a school audit.

e.   As a result of the fraudulent scheme, defendant KREUPER obtained for her personal use approximately $835,000 in funds belonging to the St. James School.

C.   <u>EXECUTION OF THE FRAUDULENT SCHEME</u>

9.   On or about March 1, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant KREUPER, in order to execute the fraudulent scheme described above, deposited approximately $5,737.75 in checks made payable to St. James School into the St. James Convent Account.

COUNT TWO

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(b)]

10.  The Acting United States Attorney realleges paragraphs 1 through 3 and 5 of this Information here.

11.  On or about April 25, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant KREUPER knowingly conducted, and willfully caused to be conducted, a financial transaction, namely, the withdrawal by means of check of approximately $6,000 from the St. James School Convent Account, affecting interstate commerce, knowing that the funds involved in the transaction represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, and knowing that such transaction was designed, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of such proceeds.

TRACY L. WILKISON
United States Attorney


SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

POONAM G. KUMAR
Assistant United States Attorney
Deputy Chief, Major Frauds Section

**EXHIBIT B**

**STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT FOR DEFENDANT**

**MARY MARGARET KREUPER**

Beginning at least as early as in or about 2008 and continuing through in or about September 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendant MARY MARGARET KREUPER, knowingly and with the intent to defraud, devised, participated in, executed, and attempted to execute a scheme to defraud St. James Catholic School, an elementary school located in Torrance, California ("St. James School"), and its administrators (the "Administration") as to material matters, and to obtain moneys, funds, assets, and other property owned by an in the custody and control of St. James School and the Administration by means of false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

At all relevant times, defendant KREUPER was a member of an order of nuns affiliated with the Catholic Church (the "order") and located in Los Angeles County, within the Central District of California. As a nun, defendant KREUPER took a vow of poverty and her living expenses were paid for by the order. For 28 years until her retirement in 2018, defendant KREUPER, a resident of Los Angeles County, was employed as the principal of the St. James School. All monies earned by defendant KREUPER from her employment at the St. James School were paid to the order.

As principal of the St. James School, defendant KREUPER was responsible for overseeing and managing the financial affairs of the school, including by properly accounting for and safeguarding the school's finances. In order to allow her to fulfill these

responsibilities, the Administration entrusted defendant KREUPER with the management and control of the School's bank accounts.  Consistent with these responsibilities, defendant KREUPER oversaw the receipt of cash and checks from parents of students enrolled at the St. James School, including checks to pay for tuition, school fees, and charitable donations to the school.  Defendant KREUPER was responsible for causing these monies to be deposited into the school's bank accounts and ensuring that the funds were appropriately accounted for in the school's financial records.

To ensure that the school's finances were properly managed, the Administration required defendant KREUPER to submit monthly and annual reports summarizing the financial position of the school.  The monthly reports contained information about the amount of tuition received as well as the expenses incurred by the school.  The annual financial reports contained a detailed summary of the St. James School's finances that included, among other information, the following: (a) a profit and loss statement for the school; (b) a balance sheet for the school; (c) a breakdown of all income received by the school, including the income received from tuition, fees, and donations; (d) a breakdown of all expenses paid by the school, including salaries paid to the staff and payments for repairs and maintenance of land and equipment; (e) a list of all bank accounts used by the school in the prior year, including the name on the account, the name of the bank at which the account was held, the account number, and the balance as of the end of the year; and (f) bank statements and bank reconciliations for each account listed on the report.

1      St. James School held its funds in bank accounts in its name.
2  In or about March 1986, an account in the name of St. James School
3  was opened at Parishioners Federal Credit Union (the "St. James
4  Savings Account").  In or around April 1995, defendant KREUPER became
5  a signatory on this account.

6      In or around March 1998, the Administration opened another
7  account in the name of St. James School at Parishioners Federal
8  Credit Union to pay for the living expenses of defendant KREUPER and
9  the other nuns employed by St. James School ("St. James Convent
10  Account").  Defendant KREUPER was a signatory on the St. James
11  Convent Account.

12      Without the knowledge and authorization of the St. James School
13  and/or the Administration, defendant KREUPER took possession of cash
14  and checks made payable to St. James School from parents of St. James
15  School students, and fraudulently diverted these funds by depositing
16  the cash and checks into the St. James Convent Account.  Defendant
17  KREUPER also deposited funds intended for St. James School into the
18  St. James Savings Account.  After depositing the funds into the St.
19  James Convent Account and St. James Savings Account, defendant
20  KREUPER then used, again without the knowledge and authorization of
21  St. James School and/or the Administration, the funds diverted from
22  the St. James Convent Account and the St. James Savings Account to
23  pay for expenses that the order would not have approved, much less
24  paid for, including large gambling expenses incurred at casinos and
25  certain credit card charges.

26      In order to further and conceal her fraudulent scheme, defendant
27  KREUPER falsified the monthly and annual St. James School's financial
28  reports.  Specifically, in these reports, defendant KREUPER failed to

account for the receipt of the diverted funds, the transfer of those funds to accounts used by defendant KREUPER, and the use of those funds by defendant KREUPER.  Further, in these reports, defendant KREUPER failed to include any reference to the St. James Convent Account and the St. James Savings Account, and failed to include the entirety of the funds deposited into and withdrawn from these accounts.  By falsifying the reports in this way, defendant KREUPER lulled St. James School and the Administration into believing that the school's finances were being properly accounted for and its financial assets properly safeguarded, which, in turn, allowed defendant KREUPER to maintain her access and control of the school's finances and accounts and, thus, continue operating the fraudulent scheme.

In furtherance of the scheme described above, on March 1, 2017, in Los Angeles County, within the Central District of California, defendant KREUPER deposited approximately $5,737.75 in checks made payable to St. James School into the St. James Convent Account at the Parishioners Federal Credit Union branch in Torrance, California, thereby causing an interstate wire communication.  Thereafter, on April 25, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant KREUPER knowingly conducted, and willfully caused to be conducted, a financial transaction, namely, the withdrawal by means of check of approximately $6,000 from the St. James Convent Account, affecting interstate commerce, knowing that the funds involved in the transaction represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, wire fraud and knowing that such transaction was designed, in whole or in part, to

conceal and disguise the nature, location, source, ownership, and control of such proceeds.  Specifically, defendant KREUPER caused a check drawn on the St. James Convent Account, located in Los Angeles County, to be deposited into a bank account in the name of Individual No. 1, who then cashed the check and provided the proceeds to defendant KREUPER so she could gamble in Nevada with the funds.

As a result of the fraudulent scheme described above, defendant KREUPER obtained for her personal use approximately $835,338.57 in funds belonging to St. James School.

<u>CERTIFICATION OF DEFENDANT</u>

I have read this STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT ("statement of facts") in its entirety.  I have had enough time to review and consider this statement of facts, and I have carefully and thoroughly discussed every part of it with my attorney.  I agree that this statement of facts is accurate and correct, and is sufficient to support a plea of guilty to the charge described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 15 of the plea agreement.

*Mary Margaret Kreuper*                    *June 2, 2021*
MARY MARGARET KREUPER                    Date
Defendant

5

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am MARY MARGARET KREUPER's attorney.  I have carefully and thoroughly discussed every part of this statement of facts with my client and agree that it is sufficient to support a plea of guilty to the charge described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 15 of the plea agreement.

_____          6/2/21
MARK BYRNE                        Date
Attorney for Defendant
MARY MARGARET KREUPER

6